[Crim. No. 10381. Second Dist., Div. One. May 4, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. BENJAMIN
WATSON, Defendant and Appellant.

Don H. Terry, under appointment by the District Court of
Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and C. Anthony Collins, for
Plaintiff and Respondent.

WOOD, P. J.—In two counts of an information the de-
fendant was accused of robbery, and in two counts he was
accused of kidnaping. In a nonjury trial he was adjudged
guilty on both counts of robbery, and not guilty on the
other counts. It was also adjudged that it was robbery of
the first degree. Defendant appeals from the judgment of
conviction.

Appellant's only contention is that the court erred in deny-

ing his motion to strike the testimony of Mr. Joiner, a victim of the robbery, wherein he said that he identified the defendant, at the police lineup, as one of the robbers. He argues to the effect that since the court ruled that defendant had been arrested illegally and that the articles obtained by the officers during a search were obtained illegally, the testimony of the victim (Mr. Joiner) that he identified the defendant, at the police lineup, as one of the robbers, was inadmissible in that the testimony was so connected with the illegal arrest that it was "fruit of the poisonous tree," i.e., the illegal arrest.

On April 10, 1964, about 7 p.m., while Mr. Joiner and Mr. Hill were in the office of a motel which was owned by Mr. Joiner, two Negro men entered the office. One of them (suspect No. 1) was wearing a red-scarf mask and was carrying a shotgun. The other one (suspect No. 2) was wearing a white-scarf mask and was carrying a knife. Suspect No. 1 said, "We want the money." Mr. Joiner put his wallet (containing a credit card, driver's license, and other cards) and about $6.00 on the desk. Suspect No. 1 picked up those articles and said, "This isn't it. We want the money." Suspect No. 2 said, "Let's get going. Money." Then the robbers, while following closely behind Mr. Joiner and Mr. Hill with the drawn gun and knife, forced them to go into the backroom. While Mr. Hill was looking for money under linen in a closet, suspect No. 1 hit him on the head with the gun. Suspect No. 2 stabbed Mr. Hill in the chest with the knife. After Mr. Joiner found the money, he handed $153 (including a $50 bill) to suspect No. 1, who then snatched Mr. Joiner's watch from his wrist. Mr. Hill handed $38 to suspect No. 2, who then took Mr. Hill's wrist watch and kicked him in the face. The robbers, after making each victim take off his pants and shoes and then lie upon the floor, said: "The first man leaves is dead." The robbers took the victims' pants and the stolen things, above mentioned, and went away.

On April 15, 1964, about 2:30 p.m., while uniformed Officers Cooper and Sandaval were traveling in a police car near Vermont Avenue and 30th Street, they observed the defendant Watson carrying a phonograph as he was walking southward on the east side of Vermont Avenue. When he arrived at 30th Street, he looked over his shoulder toward the officers. Then he went eastward on 30th Street for a few steps and turned around and walked westward across Vermont Avenue. Thereupon the officers stopped the defendant.

Officer Cooper testified, in part, as follows: They stopped the defendant because he was carrying this phonograph "in a high frequency 459 burglary area"; they asked him whether the phonograph was his; he said that it belonged to his brother, who had given it to him "to take to the pawn shop"; they asked where his brother lived; he replied that he did not know the address, but the house was on Ellendale Street; they asked what kind of phonograph it was; he replied that he did not know; the defendant told them to take him back to Ellendale Street and he would prove that his brother gave him the phonograph; they took him to an address on Ellendale; at the time they went there, they had not arrested him.

At the place on Ellendale Street, where the officers had taken the defendant, they recovered articles (consisting of People's exhibits 2 to 16 for identification—including red and white scarfs, the victim's wallet, identification cards, and wrist watches).

When the said exhibits 2 to 16 for identification were offered in evidence, the defendant objected to the offer on the ground that those articles were obtained as a result of illegal arrest and search. The objection was sustained.

Mr. Joiner testified that from his observation of the two men who took his property, he recognized the defendant Watson as the "No. 1. Suspect," referred to in his testimony; that he was able to identify him because his (witness') entire attention was centered on the man with the gun,—that he recognized the defendant by his height, complexion, contour, commanding voice, marcelled hair, and his walk; that he had occasion to observe his voice, walk, and appearance at the police station "showup"; that the robbers were at the motel from five to seven minutes; and that the defendant is the man who held him up.

Mr. Hill testified that he could not identify the robbers.

After the judge had ruled that stolen articles recovered at the place on Ellendale Street were not admissible in evidence, and after the People had rested their case in chief, counsel for defendant said: "I want to strike the testimony of Mr. Joiner as to the identification of the defendant at a police lineup as the result of an illegal search and seizure and arising from and as a part of that search and seizure." The motion was denied.

Defendant testified in substance as follows: He was released from jail (on another charge) on April 9, 1964, and he stayed at his brother's house that night. He did not have any money

when he left the jail. The next day, April 10 (date of the robbery), about 5:30 p.m., he went to a tavern (Barry's Club) on 39th Street, where he met William Ellis and other persons and they played poker until the next morning (April 11). He won about $110 while gambling there. After he had won several $5.00 bills and $10 bills (amounting to $50) he exchanged them for a $50 bill. When he was arrested he had $55, consisting of a $50 bill and five one dollar bills. He had never been at Mr. Joiner's motel and had never seen him prior to the police lineup. He did not rob Mr. Joiner or Mr. Hill.

It was stipulated that if B. Garrison were called as a witness he would testify that he was playing poker with defendant at Barry's Club on April 10 from midafternoon until the early morning hours; that defendant won more than $90 and he exchanged some small bills with William Ellis for a $50 bill. It was also stipulated that William Ellis would testify that he was at that club when defendant was playing cards there, and he gave a $50 bill to defendant for smaller bills; that he (witness) did not recall the date they were there, but shortly thereafter the defendant was arrested.

As above indicated, appellant contends that the court erred in denying his motion to strike the testimony of Mr. Joiner wherein he said that he identified the defendant at the police station. He argues, as above indicated, that said testimony was so connected with the asserted illegal arrest that it was inadmissible in evidence. The asserted connection, according to appellant, is that "but for" the arrest he would not have been in the police station where the victim would have an opportunity to try to identify him. He cites *Wong Sun* v. *United States*, 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441], wherein one Toy, after being arrested on a charge of possession of narcotics, made declarations which led the police to go to one Yee, whom they also arrested for possessing narcotics. A question therein was whether the narcotics in possession of Yee were admissible as evidence against Toy. The court herein said, at page 487: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . .' We think it clear that the narcotics [Yee nar-

cotics] were 'come at by the exploitation of that illegality' and hence that they may not be used against Toy." This cited case is distinguishable from the present case in that in the present it is apparent that the trial court found that the victim's in-court identification of the defendant was not the result of exploitation of the illegal arrest.

Appellant also cites *People* v. *Albea*, 2 Ill.2d 317 [118 N.E.2d 277, 41 A.L.R.2d 895], wherein the officers, while illegally searching the defendant's apartment for narcotics, discovered therein a witness (Vaughn) who was called by the prosecution to testify against the defendant. A question in that case was whether the witness should be permitted to testify. It was said therein (p. 321): "One could well say ... that but for ... the illegal search the witness, Ora Lee Vaughn, would not have been discovered. There appears to be an instance, however, when such evidence may be used, and that is when it is disclosed from an independent source or from an independent investigation." It was also said therein (p. 322): "It is true that the majority of decisions in the State of Illinois involving illegal search and seizure concern themselves with the suppression of evidence in the form of papers, documents, records or other property. None has been brought to our attention involving the discovery and seizure of a human being who is later used as a material witness in a prosecution. However, we cannot be unmindful of the principles established by long precedent which have sought to preserve the sanctity of the home and the right of privacy of the individual merely because the evidence has changed from inanimate to animate form." It was stated further therein (p. 323): "We have not now been called upon to determine the legality of the arrest of plainitff in error, but have merely decided that, the trial court having ruled the search to be unlawful, it therefore follows that all evidence discovered in connection therewith should have been suppressed, including the testimony of Ora Lee Vaughn." This cited case is distinguishable from the present case in that in the present case the witness, who was a victim of the robbery, was not discovered during or after an illegal search or arrest—he had reported the robbery to the police immediately after the robbers left the motel and, of course, he was known immediately as one of the victims.

In *Smith* v. *United States* (1963) 324 F.2d 879, cited by respondent (prosecution), it is said (p. 879): "These are appeals from murder and robbery convictions in which there

is urged upon us the novel point that the testimony of an eyewitness to the crime must be suppressed because the police learned from appellants, during a period of illegal detention, of the existence and identity of such an eyewitness. In short it is argued that because the confessions made during the 'unnecessary delay' are inadmissible, the testimony of an eyewitness to the crime must also be suppressed because the existence of the eyewitness was revealed to police by appellants during the same period of time." It was also said therein (p. 881) : "Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of an eyewitness to a crime because of the circumstances in which his existence and identity was learned." It was stated further therein (p. 881) : "Here no confessions or utterances of the appellants were used against them; tangible evidence obtained from appellants, such as the victim's watch, was suppressed along with the confessions. But a witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, 'speak for themselves.' The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence." It was stated further (p. 882, fn. 3) : "Here it is not some *prior* utterance of appellants or Holman which is sought to be suppressed, but the testimony of an eyewitness to an event." In that case the judgment of conviction was affirmed.

In *Payne* v. *United States* (1961) 294 F.2d 723, cited by respondent (prosecution), Payne had been arrested upon a grand larceny charge, but he had not been taken promptly before a magistrate and for that reason the detention on that charge was illegal. During such illegal detention, one Warren, a victim of a prior and similar grand larceny, identified Payne as the person who committed the prior larceny. Upon a trial of Payne on the prior charge, Warren testified and identified Payne as the perpetrator of the prior larceny. On appeal from the judgment of conviction, Payne contended that the identification testimony of Warren should have been

excluded because it was the product of Payne's illegal detention on the subsequent offense. In that case the court, in affirming the judgment, said (p. 726) : "In this case appellant's lengthy detention produced two things—Warren's identification of Payne, and Payne's admission of guilt. The latter, the admission, was excluded from evidence by the trial judge under the rule in Mallory—rightly, we think, though the point is not before us for decision. . . . As to the identification, the trial judge allowed Warren to identify Payne as he sat in the courtroom, but did not permit any reference to the identification made at police headquarters. Whether this last restriction was necessary under Mallory we need not say. However, it narrows the issue before us.

"Appellant says that but for his detention he 'would have blended back into the mass of the population,' and would have remained at large. . . . The consequence of accepting appellant's contention in the present situation would be that Warren would be forever precluded from testifying against Payne in court, merely because he had complied with the request of the police that he come to police headquarters and had there identified Payne as the robber. Such a result is unthinkable. The suppression of the testimony of the complaining witness is not the right way to control the conduct of the police, or to advance the administration of justice. The rights of the accused in a case like the present case are adequately protected when the complaining witness takes the stand in open court, for examination and cross-examination."

In *Cooper* v. *United States* (1963) 331 F.2d 776 referred to by respondent, two persons named Cooper claimed that identification testimony of robbery victims, who viewed them in a lineup, should be excluded because they were in the lineup while under an alleged illegal arrest, and because they had been unduly detained. In that case, the court said (pp. 776-777) : "In *Payne* v. *United States* [citation - supra] . . . we refused to exclude identification testimony by a witness who had seen the defendant in a line-up during a detention which violated Rule 5(a). We need not decide now whether Payne applies where the defendant is arrested without probable cause in violation of the fourth amendment, since the Coopers' allegations of lack of probable cause are insubstantial."

In the present case, the motion to strike testimony of Mr. Joiner pertained only to his testimony as to the identification at the police station. During the trial, counsel for defendant said: "I want to strike the testimony of Mr. Joiner

as to the identification of defendant at a police lineup . . . ."
At the hearing of the motion for a new trial, counsel for defendant said: "My whole motion is based upon the denial to strike the identification at the Police Department." Also at the hearing of the motion for a new trial, the judge said that the "identification of this defendant came right in the courtroom . . . ." The judge also said that the testimony as to identification at the police station did not have any weight in his consideration of the evidence, and "I have no doubt in the world as to the identity of the defendant as the complaining witness indicated."

■ The asserted illegal arrest did not render the defendant immune from prosecution. In *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633], it is said: "[A] defendant who has been subjected to illegal arrest . . . should not, by virtue of such illegality, gain immunity from punishment for the offense for which he was arrested . . . ." (See also *People* v. *Jones,* 205 Cal.App.2d 460, 468 [23 Cal.Rptr. 418]; *People* v. *Martinez,* 180 Cal.App.2d 690, 692 [4 Cal.Rptr. 829].)

■ As above indicated, Mr. Joiner, a victim of the robbery, while testifying in court, identified the defendant as one of the robbers. The manner in which the defendant was arrested had no material bearing upon the bona fides of Mr. Joiner's identification of the defendant. The information which Mr. Joiner had regarding the robbery was not acquired by him as a result of the illegal arrest of defendant. It is certain that he had been robbed and, irrespective of the arrest, he had information regarding the robbery, especially the robber with the shotgun. During the five to seven minutes the robbery was being committed, he observed that robber. Immediately after the robbery, he reported it to the police and thereby became known immediately to the police as a victim of the robbery. . He, of course, was not discovered by the officers during the arrest or search. The asserted illegal arrest did not add to or detract from the information which Mr. Joiner had of the robbery, and the arrest did not deprive the court of jurisdiction to proceed with the trial of the defendant. Mr. Joiner was properly before the court as an eyewitness of the robbery. As above stated in *Wong Sun* v. *United States, supra,* the Supreme Court of the United States has said in effect that the apt question, with respect to a claim that evidence is "fruit of the poisonous tree," is whether, granting that there is an illegal arrest, the evidence has been obtained "by exploitation of that illegality." In the present case, it

is apparent that the trial court found that the officers did not obtain the witness, Mr. Joiner, by exploiting the asserted illegal arrest. From the viewpoint of the officers, as of the time they stopped the defendant on the street after observing him carrying a phonograph in an area of frequent burglaries, they were justified in stopping him and asking questions regarding the phonograph; and further, from their viewpoint, as of the time the defendant gave vague answers to their questions and invited them to take him to a certain street so that he might locate the owner's apartment, the officers were justified in considering that the defendant had consented that they go to the apartment. In other words, under the circumstances here, the trial court could reasonably find that the officers were acting in good faith in stopping the defendant and in going to the apartment, and that they did not make an unfounded arrest or exploit an illegal arrest for the purpose of affording a victim of the robbery an opportunity to identify a robber. The witness, Mr. Joiner, made a positive in-court identification of the defendant. The defendant did not object to that testimony, did not move to strike it, and has not contended on appeal that the court erred in receiving it.

The contention on appeal is limited to asserting that the court erred in denying defendant's motion to strike the testimony of Mr. Joiner regarding his identification of defendant at the police station. As above stated, the trial judge said that the identification of "the defendant came right in the courtroom," and the testimony regarding identification at the police station did not have any weight in his consideration of the evidence. The contention that the court erred in denying the motion to strike the testimony regarding identification at the station is not sustainable.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1965.